CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 29 2007

JOHN F. CORCORAN, CLERK
BY: /s/ J. Bright
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALPHONSO BUSTER GILBERT | ) | |
|     Petitioner, | ) | Civil Action No. 7:06CV00740 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. James C. Turk |
|     Respondent. | ) | United States District Judge |

Alphonso Buster Gilbert, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. The case is presently before the court on the respondent's motion to dismiss. For the following reasons, the court will grant the respondent's motion.

### Factual and Procedural Background

On June 12, 2003, a concerned motorist called the police department in Roanoke, Virginia, to report a suspicious person on a public street carrying what appeared to be firearms. Two responding officers, Officer Fike and Officer Terwillinger, observed the petitioner, Alphonso Gilbert, walking across the Tenth Street bridge toting a backpack and a bundle of objects wrapped in a brown blanket. The wooden stock of a weapon could be seen protruding out of the end of the blanket.

After ordering Gilbert to stop, the officers inventoried the contents of the bundle and backpack. The bundle contained two shotguns, a .22-gauge rifle, and an air rifle. The backpack contained ammunition, eight knives, and a set of brass knuckles. Gilbert admitted to the officers that he was a convicted felon, and the officers placed him under arrest for possession of firearms.

Gilbert was indicted by a federal grand jury on August 21, 2003 and charged with one

count of possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). Gilbert stipulated to the elements of the § 922 offense: that he was a convicted felon, that he knowingly possessed firearms, and that at least one of the firearms had traveled in interstate commerce. Nevertheless, he asserted in a pre-trial motion that he was entitled to an affirmative defense of "innocent possession," because he had no illicit motive in possessing the guns and had attempted to dispose of them quickly.

At trial, Gilbert testified to the events surrounding his possession of the weapons. He claimed that he had happened upon the bundle and the backpack on his way to work, approximately ten to fifteen minutes prior to encountering the officers. He stated that he spotted what appeared to be some aluminum and sheet metal in a nearby alley and decided to enter the alley and investigate because his son collects scrap metal for sale to a junkyard. Under the metal debris, he found the blanket containing the firearms and the backpack containing the ammunition and additional weapons.

Gilbert testified that he decided to turn over the firearms to the police out of concern about leaving the weapons in a place that was frequented both by children and by people drinking alcohol and because he was aware that the police would pay a fifty-dollar reward for each gun. While the police station was only five blocks away, Gilbert decided that a nearby payphone, which lay in the opposite direction, was a better option. He gathered the weapons and carried them out to the street. When he arrived at the phone, however, he discovered that it was broken.

Upon learning that the telephone was broken, Gilbert decided that his best course at this point was to continue in the direction he was already traveling. He began to carry the backpack and the firearms up Tenth Street and across a bridge to find an acquaintance who ran an engine

2

shop. Gilbert hoped that this acquaintance would give him and the guns a ride to the police station. Gilbert traveled roughly four blocks along the street when he encountered the officers responding to the concerned motorist's call.

At this point, the officers' testimony differed from that of Gilbert. While Gilbert testified that he tried to flag down one of the officers as the officer passed in his marked police car, both officers testified that they did not see Gilbert make such an attempt. Gilbert also testified that he voluntarily relinquished the guns when Officer Fike came up to him, but Officer Fike testified that Gilbert put down the guns "reluctantly," only when ordered to do so.

The officers' testimony also differed from the explanation Gilbert offered at the time for his activities. Gilbert claimed that he immediately told Officer Fike: "Look, I'm going to turn them into you anyway. I've got a felony on my record and I don't want to be involved in no guns like that." Officer Fike testified, however, that Gilbert's first reaction upon being stopped was to ask what he had done. Both officers stated that Gilbert claimed that he was taking the weapons across the bridge to turn them over to a friend who would be interested in them, rather than explaining that he was taking the weapons to the police.

Gilbert agreed with the officers' testimony that he could not recall the name of this friend at the time of the police encounter. Gilbert did describe to the officers the location where he claimed to have found the weapons, but when Officer Fike went to investigate, he was unable to locate the debris under which Gilbert claimed the bundle and backpack had been hidden.

At the conclusion of the trial, this court found, based upon the evidence and stipulations, that Gilbert was a convicted felon who had "knowingly and willfully had in his possession a firearm" that had moved in interstate commerce, that there was no innocent owner defense to the

3

charge, and that he was guilty as charged in the one count indictment. Gilbert was sentenced at a separate hearing to incarceration for a period of one hundred and eighty (180) months.

Gilbert appealed to the Fourth Circuit on the issue of whether his conviction as a felon-in-possession under 18 U.S.C. § 922(g)(1) should be reversed on the ground that Gilbert qualified for an "innocent possession" defense. United States v. Gilbert, 430 F.3d 215 (4th Cir. 2005). The Fourth Circuit affirmed Gilbert's conviction and sentence on November 28, 2005, finding that the felon-in-possession statute is not amenable to an "innocent possession defense," and that even if it were, Gilbert's account did not establish such a defense. Id. at 218-20. The Supreme Court denied Gilbert's petition for a writ of certiorari on October 2, 2006. Gilbert v. United States, 127 S. Ct. 58 (2006).

Gilbert filed the instant § 2255 motion. Liberally construed, his complaint raises the following grounds for relief:

1. There was no probable cause for his arrest;

2. The United States District Court lacked jurisdiction to hear the government's case against Gilbert;

3. The court unconstitutionally relieved the prosecution of its duty to prove every element of the charge by relying on a mandatory presumption;

4. The Court unconstitutionally presumed Gilbert's guilt when there existed sufficient evidence to show his innocence.

5. Prosecution failed to prove beyond a reasonable doubt that Gilbert was in possession of firearms;

6. The prosecution failed to prove beyond a reasonable doubt that Gilbert knew the

4

"long guns" in his custody fell within the scope of the statute;

7. There was no evidence that the long guns traveled in interstate commerce;

8. Counsel provided ineffective assistance by failing to subject the prosecution to meaningful adversarial testing–particularly, by:
    (A) stipulating to the elements of the offense creating jurisdiction;
    (B) waiving Gilbert's right to a jury trial; and
    (C) entering into a strategic alliance with prosecution.

9. The judge was incapable of equitably and objectively weighing the facts of the case to reach a fair decision, due to the notion of "super-stare decisis;"

10. The judge abused his discretion when sentencing Gilbert because the Sentencing Guidelines have been deemed to be merely "advisory."

The United States filed a motion to dismiss. The clerk of court sent Gilbert a notice of the government's motion to dismiss pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), in which he was notified of his opportunity to file a response to the government's motion within twenty days. Gilbert filed a response to the motion, in which he also asserted an additional ground for relief: that he was incorrectly sentenced under 18 U.S.C. § 924(e) because he is not a career offender. Because Gilbert has responded to the government's motion to dismiss, the government's motion is now ripe for review.[1]

---

[1] The court notes that because Gilbert could have raised Claims 1-7, 9, and 10 on direct appeal, they are procedurally defaulted from collateral review under § 2255. See Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'") (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)). Because procedural default is an affirmative defense, however, and the government has failed to raise this defense, the court cannot dismiss the claims on this ground and will proceed to address them on their merits.

5

## Standard of Review for Claims Brought Under 28 U.S.C. § 2255

Title 28, United States Code, Section 2255 is designed to correct fundamental constitutional or jurisdictional errors which would otherwise result in a "complete miscarriage of justice," or events that were "inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 784 (1979). In order to move the court to vacate, set aside or correct a sentence under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was imposed in violation of the Constitution or laws of the United States; (2) that the Court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255 (2000).

Because a habeas petition is a civil action, the burden of proof is upon the petitioner to establish the allegations of his motion by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir.1965). A hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief, United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988), or are so "palpably incredible" or "patently frivolous or false as to warrant summary dismissal." Blackledge v. Allison, 431 U.S. 63, 76 (1977) (internal citations omitted). Nevertheless, because he has filed his Motion pro se, the Petitioner is entitled to have his petition and asserted issues construed liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

## Discussion

### I.

Gilbert first asserts that arresting Officers Fike and Terwillinger, did not have probable

6

cause to arrest him.

An officer may make a warrantless arrest of an individual in a public place for a felony if the arrest is supported by probable cause. Maryland v. Pringle, 540 U.S. 366, 370 (2003). In determining whether probable cause existed for an arrest, the court must look at the totality of the circumstances surrounding the arrest. Illinois v. Gates, 462 U.S. 213, 230-32 (1983). Probable cause for a warrantless arrest is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

In the instant case, Officers Fike and Terwillinger identified Gilbert as the subject of a dispatch signaling officers to look out for a "suspicious person carrying what appeared to be firearms traveling over the Tenth Street bridge." (Trial Tr. at 29), and reported seeing the wooden stock of a firearm protruding out of a bundle that appeared to carry one or more firearms. Officer Fike approached Gilbert and asked him to stop and set down the bundle. While Fike inventoried the contents of the bundle, Gilbert spoke with Officer Terwillinger and admitted that he was a convicted felon.

It is unlawful under 18 U.S.C. § 922(g)(1) for a convicted felon to possess a firearm. Thus, once Gilbert admitted that he was a convicted felon, Officers Fike and Terwillinger were warranted in believing that Gilbert had committed an offense. Accordingly, the officers had probable cause to arrest Gilbert. Claim 1 will therefore be dismissed.

## II.

Gilbert next argues that the district court lacked jurisdiction to hear the government's

7

Case 7:06-cv-00740-JCT-mfu   Document 9   Filed 08/29/07   Page 7 of 18   Pageid#: 227

case against him because he never knowingly, voluntarily, or competently waived jurisdiction.

The jurisdiction of federal courts over violations of the laws of the United States of America is well-established. A defendant charged with violating a federal law is not asked to submit to the jurisdiction of the federal courts. Rather, the United States Code endows the district courts of the United States "original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231 (2000).

In this case, Gilbert was charged by an indictment returned by a federal grand jury with a violation of 18 U.S.C. § 922(g)(1). Because Gilbert was charged with violating a federal statute, this case lies squarely within the original federal court jurisdiction conferred under 18 U.S.C. § 3231. Accordingly, the court finds that it had jurisdiction to hear the government's case. Claim 2 will be dismissed.

### III.

In his third ground for relief, Gilbert asserts that the government was unconstitutionally relieved of its burden to prove each element of the charge against Gilbert.

In order for Gilbert to be found guilty of violating 18 U.S.C. § 922(g)(1), the government was required to prove beyond a reasonable doubt that: (1) Gilbert was a convicted felon; (2) Gilbert knowingly possessed firearms; and (3) at least one of the firearms had traveled in interstate or foreign commerce. Gilbert, by counsel, stipulated to each of these three elements. By so stipulating, Gilbert waived the requirement that the government produce evidence (other than the stipulation itself) to establish the facts stipulated to beyond a reasonable doubt. United States v. Muse, 83 F.3d 672, 678 (4th Cir. 1996).

Gilbert has made no effort to invalidate the stipulation by showing, for instance, that it

8

was wrong, that he entered into it inadvertently, or that he was incompetent when he made it. By presenting nothing to cast doubt on the stipulation's validity, Gilbert abandoned any basis for challenging its evidentiary value as to the stipulated elements. United States v. Reedy, 990 F.2d 167, 169 (4th Cir. 1993). Accordingly, Gilbert's claim that the government was unconstitutionally relieved of its burden to prove each element beyond a reasonable doubt is without merit and will be dismissed.

## IV.

Gilbert next contends that the court unconstitutionally relied on a mandatory presumption to find Gilbert guilty, contrary to evidence sufficient to show his innocence.

As noted above, Gilbert stipulated to each element of 18 U.S.C. § 922(g)(1) and tried the case on the sole issue of whether there exists an innocent possession defense to the crime. This court ruled that the Fourth Circuit does not recognize such a defense and the Fourth Circuit subsequently agreed. See Gilbert, 430 F.3d at 220. On these facts, Claim 4 is without merit and will be dismissed.

## V.

In his fifth ground for relief, Gilbert asserts that the government failed to prove beyond a reasonable doubt that Gilbert was in possession of firearms. He claims that the court defined "beyond a reasonable doubt" in such a way that it eased the prosecution's burden of proof. For the following reasons, the court finds that Gilbert's claim is without merit and will be dismissed.

As defined for purposes of 18 U.S.C. § 922(g)(1), a "firearm," is:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any

9

destructive device.

18 U.S.C. § 921(a)(3) (2000). When the government seeks to establish actual possession of a firearm under §922(g), it must prove that the defendant voluntarily and intentionally had physical control over the firearm. United States v. Scott, 424 F.3d 431, 435 (4th Cir. 2005).

In this case, Gilbert, by counsel, stipulated that he "knowingly and voluntarily possessed and transported firearms on the morning of June 12, 2003 . . . ." (Plaintiff's exhibit 1), thus relieving the government from its burden of proving this element beyond a reasonable doubt. Nevertheless, the court notes that there was evidence in the trial record, including Gilbert's own testimony, sufficient to show that Gilbert voluntarily and intentionally removed the bag and bundle of firearms from their hiding location and carried them down Tenth Street. As the government met its evidentiary burden through Gilbert's stipulations and testimony, Claim 5 will be dismissed.

## VI.

Gilbert next contends that the prosecution failed to prove beyond a reasonable doubt that he knew that "long guns" fell within the scope of the statute.

The Fourth Circuit has held that "to establish a knowing violation of 18 U.S.C. § 922(g), . . . the United States must prove the defendant's knowledge with respect to possession of the firearm, but not with respect to other elements of the offense." United States v. Jones, 471 F.3d 535, 540 (4th Cir. 2006). The government is required to prove that a defendant "knew that the weapon he possessed was a firearm, as we commonly use the word." United States v. Frazier-El, 204 F.3d 553, 561 (4th Cir. 2000). The defendant need not "know that his conduct was illegal, but only that he 'know the facts that make his conduct illegal.'" Id. (quoting Staples v. United

10

States, 511 U.S. 600, 605 (1994). In other words, the defendant must know that the weapon he carried was a firearm, but need not know that possession of the firearm constituted a violation of law.

In this case, Gilbert argues that the government failed to prove beyond a reasonable doubt that Gilbert knew that "long guns" fell within the scope of 18 U.S.C. § 922(g). The government, however only needed to prove that Gilbert knew the "long guns" were "firearms," as we commonly use the word. Gilbert stipulated that he "knowingly and voluntarily possessed and transported *firearms* on the morning of June 12, 2003," (Plaintiff's exhibit 1) (emphasis added). Gilbert also affirmed at trial that "he knew [he was] carrying a firearm on June 12th." (Trial Tr. at 66). As the government met its evidentiary burden through Gilbert's stipulations and testimony, Claim 6 will be dismissed.

## VII.

Gilbert next asserts that the government failed to show that the long guns in Gilbert's custody traveled in interstate commerce. As discussed above, however, Gilbert, by counsel, stipulated that "[a]t least one of the firearms in question had previously traveled in interstate commerce." (Plaintiff's exhibit 1). As such, the government was relieved of its duty to present evidence to prove this element of the offense. Muse, 83 F.3d at 678. Thus, Claim 7 is without merit and will be dismissed.

## VIII.

Gilbert next alleges that his counsel provided constitutionally ineffective assistance by failing to subject the prosecution to meaningful adversarial testing–particularly, by stipulating to the elements of the offense, waiving Gilbert's right to a jury trial, and entering a strategic alliance

11

with the prosecution. For the following reasons, the court concludes that Gilbert's counsel was not constitutionally ineffective.

To prove that counsel's assistance at trial was so defective as to require reversal of his conviction, a petitioner must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, under the performance prong, petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. Petitioner must overcome a strong presumption that counsel's strategy and tactics fall "within the range of competence demanded from attorneys defending criminal cases." Id. at 689; United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004). Second, under the prejudice prong, petitioner must demonstrate "a reasonable probability" that but for counsel's errors, the result reached by a reasonable and impartial fact finder would have been different. Strickland, 466 U.S. at 694-95. If it is clear that a petitioner has not satisfied one prong of the Strickland test, the court need not inquire whether he has satisfied the other prong. Id. at 697.

### A. Counsel's stipulation to the elements of the offense

Gilbert first claims that he received ineffective assistance of counsel because his attorney stipulated to each element of the offense for which Gilbert was charged. Gilbert asserts that this conduct violated his due process rights by allowing him to be convicted without each element of the offense being proven beyond a reasonable doubt.

Notwithstanding whether counsel's stipulation was reasonable, Gilbert has failed to establish prejudice under Strickland's second prong. At trial, Gilbert acknowledged both his

status as a convicted felon and that he was in possession of firearms. (Tr. at 40-45). The presentence report prepared in anticipation of Gilbert's sentencing indicates that the firearms were examined and determined to have been manufactured outside of the Commonwealth of Virginia, and therefore had affected interstate commerce. (Presentence Report at 3). Given these facts, a reasonable and impartial fact finder would have found Gilbert guilty under 18 U.S.C. § 922(g)(1). Thus, Gilbert fails to show that but for counsel's tactical decision to stipulate to the elements of the offense, the outcome of the trial would have been different. Claim 8(A) will therefore be dismissed.

### B. Counsel's Waiver of Gilbert's Right to a Jury Trial

Gilbert contends that he did not voluntarily, knowingly, and intelligently waive his right to a jury trial.[2] As support for this contention, Gilbert claims that, but for his counsel's "deficient performance and betrayl [sic]," he "would have sought a jury trial." (Motion at 7). Accordingly, the court construes Gilbert's claim as stating that his counsel provided ineffective assistance by waiving Gilbert's right to a jury trial.

Gilbert fails to overcome the presumption, under the first prong of Strickland, that his counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Depending upon the circumstances of a particular case, there might be many objectively reasonable reasons for a defense lawyer to advise his client to waive a jury trial. Wyatt v. United States, 591 F.2d 260, 266 n. 11 (4th Cir. 1979). In this case, Gilbert's counsel recommended a bench trial because he "would not have been able to argue 'transitory possession' to the jury if the Court refused an instruction on such an offense." (Affidavit at 2).

---

[2] Counsel for the United States inexplicably failed to address this claim in its Motion to Dismiss.

Considering the circumstances as they existed at that time, it was reasonable for Gilbert's counsel to believe that the government would be able to prove its case against Gilbert beyond a reasonable doubt and if it did, that Gilbert would face an enhanced sentence as an armed career offender. As such, counsel's decision to seek a bench trial cannot be said to be unreasonable.

Furthermore, Gilbert has failed to demonstrate prejudice under the second Strickland prong. Notwithstanding the fact that Gilbert stipulated to each element of the offense, evidence was presented at trial from which a reasonable juror could conclude that Gilbert was a convicted felon and was in possession of firearms. Additionally, the Government had evidence to show that the firearms had traveled in interstate commerce. (Presentence Report at 3). Finally, the Fourth Circuit rejected Gilbert's affirmative defense of "transitory," or "innocent" possession. Gilbert, 430 F.3d at 216. As Gilbert fails to meet his burden under both the performance and prejudice prongs of Strickland, claim 8(B) will be dismissed.

### C. Counsel's Alleged Strategic Alliance with the Prosecution

Gilbert asserts that he received ineffective assistance of counsel because his counsel was in strategic alliance with the prosecution. In support of this claim, Gilbert alleges that his counsel stipulated to the elements of the offense and waived Gilbert's right to a jury trial.

As noted above, counsel's decisions to stipulate to the elements of the offense and to seek a bench trial did not amount to ineffective assistance under Strickland. Because Gilbert offers no other support for his contention that counsel was allied with the prosecution, and because the record is devoid of any evidence showing such an alliance, Claim 8(C) will be dismissed.

### IX.

Gilbert's next ground for relief is that the court was incapable of equitably and

objectively weighing the facts of his case to reach a fair decision, due to the notion of "super-stare decisis." The court finds no merit to this claim. There is nothing in the record indicating that the court reached its decision or sentenced Gilbert based on any notion of "super-stare decisis," or "super precedent." Rather, the court declined to grant Gilbert's affirmative defense of "transitory," or "innocent" possession due to a lack of *any* Fourth Circuit precedent recognizing this defense. Accordingly, Claim 9 will be dismissed.

## X.

Gilbert's next claims that the court abused its discretion when sentencing Gilbert because the Sentencing Guidelines have been deemed to be merely "advisory." While Gilbert is correct in stating that the Guidelines are merely advisory, see United States v. Booker, 543 U.S. 220 (2005), the Guidelines did not play a role in Gilbert's sentencing.

Rather than sentencing Gilbert to be incarcerated for a period of 188-235 months, as advised under the Guidelines, this court departed below the advisory sentencing range to sentence Gilbert to the statutory mandatory minimum of 15 years, or 180 months, pursuant to 18 U.S.C. § 924(e). In describing its reasons for sentencing Gilbert below the Guidelines' range, the court stated that it did not believe "the guidelines adequately considered the situation in which [Gilbert] possessed [the] weapons." (Sentencing Tr. at 14). The court also noted Gilbert's "health problems and mental problems" as a reason for departing from the Guidelines. (Tr. at 14). Therefore, because Gilbert was not sentenced according to the Sentencing Guidelines, Claim 10 will be dismissed.

## XI.

Gilbert's final ground for relief is that he was incorrectly sentenced under 18 U.S.C.

15

§ 924(e), because he is not a career offender. He asserts that, prior to the instant offense, he had only two previous felonies–one for statutory burglary and one for distribution of cocaine–and that the court erred in using the instant offense to heighten his sentence under § 924(e) because a conviction under § 922(g) is neither a crime of violence nor a serious drug offense.

Title 18, United States Code Section 924(e) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1) (2000). Section 924 defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that– . . . .
>     (ii) is burglary . . . .

18 U.S.C. § 924(e)(2)(B)(ii). A "serious drug offense" is defined as:

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii).

In this case, Gilbert's Presentence Report identifies three prior felony convictions qualifying Gilbert as an armed career offender, for purposes of 18 U.S.C. § 922(e): one conviction for statutory burglary and a conviction for two counts of distributing cocaine. Gilbert was convicted of statutory burglary in the Roanoke City Circuit Court on September 1, 1996.

16

Statutory burglary is a "violent offense" under 18 U.S.C. § 922(e)(2)(B)(ii). Gilbert was also convicted in the Roanoke City Circuit Court on July 6, 1999 of distributing cocaine on April 13, 1999 and on June 6, 1999. Cocaine distribution is a "serious drug offense" under § 922(e)(2)(B)(ii).

Gilbert's conviction for distributing cocaine was properly treated as two felony convictions qualifying him for an enhanced sentence under § 922(e)(1). The Fourth Circuit has held that "[n]othing in § 924(e) or the Guidelines suggests that offenses must be tried or sentenced separately in order to be counted as separate predicate offenses." United States v. Samuels, 970 F.2d 1312, 1315 (4th Cir. 1992). "The only requirement is that the predicate offenses be "committed on occasions different from one another," id. (quoting 18 U.S.C. § 924(e)(1)), and Gilbert's offenses plainly meet that standard: Gilbert committed the drug felonies on April 13, and June 6, 1999. Where this requirement is met, the courts have consistently declined to impose additional barriers to sentencing under the armed career offender statute. Id. (citing United States v. Mason, 954 F.2d 219, 221 (4th Cir.1992) ("[T]he statute does not require a conviction for one predicate crime before the next predicate crime is committed.")).

The court finds that because Gilbert had one previous conviction for a violent felony and two previous convictions for serious drug offenses, committed on occasions different from each other, Gilbert was properly sentenced as an armed career criminal under 18 U.S.C. § 924(e). His claim to the contrary will be dismissed.

## XII.

For the stated reasons, the court concludes that the government's Motion to Dismiss must be granted, as Gilbert has not established any ground on which he is entitled to relief under 28

U.S.C. § 2255. The Clerk is directed to send copies of this opinion and the accompanying order to the petitioner and counsel of record for the respondent.

**ENTER**: This 29th day of August, 2007.

*/s/ James C. Turk*
Senior United States District Judge